UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN RIVERA,<br><br>                      Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; JOHN WRIGHT; and DOES 1-10, inclusive,<br><br>                      Defendants. | Case No.: 3:24-cv-00872-JES-BLM<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

Pending before the Court is the County of San Diego's ("the County") motion to dismiss the *Monell* claim asserted against it. ECF No. 8. Plaintiff filed an opposition, and the County filed a reply. ECF Nos. 12, 13. On October 3, 2024, the Court took the matter under submission. ECF No. 14. After due consideration and for the reasons discussed below, the Court **GRANTS** the County's motion to dismiss.

## I.    BACKGROUND

On May 16, 2024, Plaintiff Christian Rivera ("Rivera") filed a Complaint against the County of San Diego and John Wright ("Wright"), a deputy probation officer for the County. ECF No. 1. The Complaint centers around an incident that occurred to Rivera when he was a minor in custody at the East Mesa Juvenile Detention Facility in the Otay Mesa area of San Diego County.

1

Specifically, Plaintiff alleges that on May 17, 2022, when he exited his room for breakfast at 7:30 a.m., without any provocation, Defendant Wright slammed his head into the wall, causing him to crash to the floor semi-unconscious and bleeding from a gash in his head. ECF No. 1 ¶ 6. Plaintiff alleges that he was then swarmed by twenty-one custodial deputies, one of which was Watch Commander Chavon Green ("Green"). *Id.* Plaintiff was then was searched for contraband. *Id.* ¶ 7. When the officers did not find anything, Watch Commander Green escorted Plaintiff back to his room. *Id.* A medical team arrived shortly after and stitched Plaintiff's head. *Id.* ¶ 8. Plaintiff alleges that he was not provided additional medical treatment, nor was he taken to a medical facility off site for further examination. *Id.* Plaintiff's parents were not notified of this incident or Plaintiff's condition until later, after Plaintiff had a chance to speak to them himself. *Id.* ¶ 10.

Plaintiff alleges that he never "swore, swung, kicked, spat, or made any other aggressive gestures prior to having his head slammed into the wall by Defendant Wright." *Id.* ¶ 6. However, he alleges that Defendant Wright stated in his incident report that Plaintiff "assumed an aggressive posture," and omitted from his report that he slammed Plaintiff's head into the wall, instead writing that he "struck the youth in the upper chest area then [] pulled him to the floor." *Id.* ¶¶ 6, 9. Plaintiff alleges that Defendant Wright was not disciplined for this incident. *Id.* ¶ 11. In addition, Watch Commander Green wrote in an addendum to Defendant Wright's report that, after reviewing the CCTV and based on his own personal involvement, he concluded Defendant Wright's "use of force was 'reasonable' under the circumstances." *Id.* ¶ 17.

Based on the facts above, Plaintiff alleges two causes of action: (1) excessive force under 42 U.S.C. § 1983 against Defendant Wright; and (2) *Monell* claim for unconstitutional policy under 42 U.S.C. § 1983 against the County. *Id.* ¶¶ 12-19.

## II. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all

well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

### III. DISCUSSION

The County moves to dismiss the *Monell* claim against it. Under *Monell*, municipalities could be sued under § 1983 as a person "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To establish municipal liability "for failing to act to preserve constitutional rights, the plaintiff must prove: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Van Ort v.*

*Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1978). At the pleading stage, a plaintiff's Monell claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself. *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)); *see Chung v. Cnty. of Santa Clara*, 614 F. Supp. 3d 709, 723 (N.D. Cal. 2022) ("[M]erely alleging that a policy, custom, or practice existed is not enough.").

The main point of contention between the parties here is whether the complaint sufficiently alleges that the County had a policy in place. A municipal policy can be any of the following: 1) an official policy, 2) an undocumented but pervasive practice, 3) a failure to train, supervise, or discipline demonstrated by pattern, or 4) ratification of decisions or acts of subordinates by policymakers. *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 829 (9th Cir. 2023).

The relevant allegations in the Complaint regarding the policy as are follows:

¶ 15: The COUNTY OF SAN DIEGO had an unwritten policy that resulted in the constitutional violation of Plaintiff RIVERA's rights under the Fourth and Fourteenth Amendment. Such an unwritten policy amounted to a deliberate indifference to the violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendment. And such an unwritten policy was the moving force behind the constitutional violation.

¶ 16: Municipal policies that violate the constitutional rights of citizens are rarely express written policies of a municipality. As such, an inquiry must be made into each case to determine if an unwritten policy exists and, if so, whether it was the moving force behind the constitutional violation. Plaintiff RIVERA did not threaten anybody, he did not swing, kick, or spit at anybody. Here, a single deputy used enough force to crack open Plaintiff RIVERA's head based on an aggressive posture he supposedly perceived. After the use of force, Defendant WRIGHT then wrote a report in which he never mentioned slamming Plaintiff RIVERA's head into a wall. Instead, he wrote that he "struck the youth in the upper chest and pulled him to the floor." In reality, Plaintiff's head was slammed into the wall and he collapsed semi-conscious on the floor.

¶ 17: Defendant WRIGHT wrote that the East Mesa Juvenile Detention Facility Watch Commander Chavon Green was one of the officers that responded to the use of force. Watch Commander Green was physically present and able to see Plaintiff RIVERA's condition on the floor. Indeed, Deputy WRIGHT wrote that Watch Commander Green was the one that assisted Plaintiff RIVERA to his feet so he could be walked back to his room. Some seven days later, Watch Commander Green wrote an addendum to Deputy WRIGHT's incident report. In the addendum, Commander Green wrote that he reviewed the CCTV video of the incident. Based on his own personal involvement, and review of the CCTV video, Watch Commander Green concluded that the use of force was "reasonable" under the circumstances.

¶ 18: The conclusion of Watch Commander Green was not only deliberately indifferent to Plaintiff RIVERA's constitutional rights, it was deliberately indifferent to the truth. A lie told enough times becomes the truth. And this is exactly the kind of unwritten policy that became the moving force behind the violation of Plaintiff RIVERA's constitutional rights.

The Court will consider if these allegations are sufficient to sustain a cause of action for *Monell* liability under the various methods of establishing that a policy existed. The Court notes that neither party suggests, nor do the allegations raise, a failure to train theory.

### A. Official Policy

The first theory that Plaintiff could proceed under to establish *Monell* liability is that the complaint sufficiently alleged an official policy of the County. As mentioned above, even at the motion to dismiss stage, Ninth Circuit law requires that Plaintiff still comply with *Iqbal* and *Twombly* in alleging an official policy.

Under this standard, Plaintiff's allegations fail. Paragraph 15 of the complaint recited above amounts to nothing more than a recitation of the elements of a *Monell* claim—it cannot suffice to meet the pleadings requirements. *A.E.*, 666 F.3d at 636–37 (quoting *Starr*, 652 F.3d at 1216) (The complaint "may not simply recite the elements of a cause of action."). Paragraphs 16 and 17 of the complaint detail facts regarding what Plaintiff alleges to have happened to him. However, nothing in either paragraph identifies any policy of the County. *Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal.

2013) (complaint must "specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' Constitutional injuries"). Paragraph 18 fairs no better—it talks about an unwritten policy but does not identify what such policy is.

These allegations are not sufficiently specific under *A.E. See A.E.*, 666 F.3d at 637 (holding that allegations that a county "'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs' that [plaintiff] elsewhere alleged [in the complaint]" was not sufficient); *Mendy v. City of Fremont*, No. C-13-4180 MMC, 2014 WL 574599, at *3 (N.D. Cal. Feb. 12, 2014) (holding that "informal custom or policy that tolerates and promotes the continued use of excessive force and cruel and unusual punishment against and violation of civil rights of citizens by City police officers in the manner alleged [elsewhere in the FAC]" lacks required specificity). Thus, the Court finds that the complaint fail to a *Monell* claim based on official policy.

**B. Custom**

A plaintiff may also establish municipal liability by demonstrating "the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In other words, it "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (citing *Monell*, 436 U.S. at 691). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *see also J.M. by and through Rodriguez v. Cty. of Stanislaus*, No. 18-CV-01034, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018) ("[O]ne or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a

policy, taking into account their similarity, their timing, and subsequent actions by the municipality.").

Plaintiff's allegations in the complaint only relate to his one incident. There are no allegations related to any other instances that could constitute a practice or custom. Such allegations are insufficient. *See, e.g.*, *Garcia v. Cty. of Napa*, No. 21-CV-03519-HSG, 2022 WL 110650, at *5 (N.D. Cal. Jan. 12, 2022) (holding that the plaintiffs did not sufficiently plead a custom or practice because the allegations related to a single shooting); *Cain v. City of Sacramento*, No. 2:17-cv-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (dismissing the plaintiff's *Monell* claim because it alleged only a single encounter between plaintiff and jail staff). Thus, the Court finds that the complaint fails to state a *Monell* claim based on practice or custom.

**C. Ratification**

Finally, the Court considers whether the complaint alleges a theory under ratification. A plaintiff suing under 42 U.S.C. § 1983 may establish municipal liability by demonstrating "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citation omitted). The policymaker must know about the alleged constitutional violation "and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a section 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). In addition, the person identified to have ratified the decision must qualify as "a final policymaker." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). A person has final policy-making authority when he or she is "in a position of authority such that a final decision by that person may appropriately be attributed to the Municipality." *Lytle*, 382 F.3d at 983.

1    Here, the allegations could raise a ratification theory based on Watch Commander
2 Green's actions reviewing Defendant Wright's actions and report. However, a *Monell*
3 claim under a ratification theory fails because there are no allegations that would establish
4 that Watch Commander Green has final policy-making authority. *See Zografos v. City &*
5 *Cnty. of San Francisco*, No. C 05-3881 PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec.
6 13, 2006) (decisions must be "final, unreviewable, and not constrained by the official
7 policies of superiors" in order to be the decision of a final policymaker). Thus, the Court
8 finds that the complaint also fails to a *Monell* claim based ratification.

### IV.   CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS** the County's motion to dismiss the *Monell* claim.  Plaintiff is permitted to file an amended complaint if he wishes **within 21 days of this order**. Defendant must respond to the new amended complaint **within 14 days**.

**IT IS SO ORDERED.**

Dated:  November 1, 2024

Honorable James E. Simmons Jr.
United States District Judge